## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

STEPHEN ROBBINS, on behalf of          )
himself and all those similarly situated     )
                                       )
      Plaintiff,                        )
                                       )
vs.                                    )          CASE NO. _____
                                       )
DYCK O'NEAL INC.,                      )
Serve Registered Agent:                )
   The Corporation Company, Inc.       )
   112 SW 7th Street Suite 3C,         )
   Topeka, KS 66603                    )
                                       )
      Defendant.                      )

### CLASS ACTION PETITION

COMES NOW, Plaintiff, on behalf of himself and all those similarly situated, by and through counsel, and states the following for his causes of action against Defendant Dyck O'Neal, Inc.:

### PRELIMINARY STATEMENT

1.      This is a class action brought pursuant to Rule 23 of the Federal Rules of Civil Procedure against Defendant for its routine and systematic violations of the Telephone Consumer Protection Act ("TCPA") 47 U.S.C § 227 et seq. and The Kansas Consumer Protection Act ("KCPA") K.S.A. 50-623 et seq.

2.      Defendant's actions unlawfully deceive and mislead consumers by attempting to collect alleged debts through unfair or unconscionable means and by impermissibly seeking repayment of debts that have been cancelled by the original creditor or some previous assignee.

### PARTIES

1

3.    Plaintiff Stephen Robbins ("Plaintiff") is a natural person residing in Olathe, Johnson County, Kansas.

4.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and K.S.A. 50-624(b).

5.    Defendant Dyck O'Neal Inc. ("Defendant" or "Dyck O'Neal") is a business entity organized under the laws of Texas with its principal place of business in Texas.

6.    Dyck O'Neal's principal business is the collection of consumer debts.  It regularly attempts to collect debts allegedly owed to others through the use of interstate communications nationally and specifically to enforce consumer transactions within the State of Kansas.

7.    Dyck O'Neal is a "supplier" as defined by K.S.A. 50-624(l).

## JURISDICTION AND VENUE

8.    Jurisdiction is proper in this Court under 28 U.S.C. § 1331, 15 U.S.C. § 1692k(d), 47 U.S.C. § 227, and 28 U.S.C. § 1367.

9.    Venue is proper in this Court because the actions, events,  or omissions giving rise to this action occurred in this District, Plaintiff resides in this District, and Defendant transacts business in this District.

## BACKGROUND

10.    Dyck O'Neal is a debt collector that purchases alleged debts that are in default, including alleged debts from foreclosed mortgages, with the intent to enforce the alleged debts.

11.    Dyck O'Neal is a member of the Receivables Management Association ("RMA"), formerly known as the Debt Buyers' Association.

12.    Dyck O'Neal is certified as a "Certified Professional Receivables Company" ("CPRC") by the RMA, signifying that Dyck O'Neal follows the same or substantively similar procedures as other RMA member debt buyers.

13.    Dyck O'Neal obtains and relies on minimal and unreliable information when attempting to collect alleged consumer debts.

14.    As a result, Dyck O'Neal routinely attempts to collect alleged consumer debts that it knows are not actually owed or could have known were not owed with minimal effort.

15.    Dyck O'Neal commonly purchases large numbers of consumer debt accounts in a bundle or portfolio at one time, as is common practice in the debt buying industry.

16.    In their normal course of business, debt buyers such as Dyck O'Neal purchase nothing more than a spreadsheet that provides minimal identifying information for the alleged debtor, an account number, and an alleged balance.[1]

17.    In the normal course of business, debt buyers such as Dyck O'Neal rarely, if ever, do any proper due diligence or request documentation that would allow the debt buyer to make an independent assessment of the validity of the alleged debt or to be able to verify the amounts stated in the spreadsheet.

18.    In their normal course of business, debt buyers such as Dyck O'Neal do not have enough information to prove that the debt actually exists, that the debt buyer has a legal right to collect the alleged debts or whether the consumer ever explicitly consented to contact by phone.

19.    Despite having insufficient evidence of the alleged debts or any legal right to contact the alleged consumer debtors, debt buyers such as Dyck O'Neal send letters demanding payment (known as "dunning letters"), call the consumers at home or on their cell phones, and report the alleged debts as "in collection" to credit reporting agencies ("CRAs" like Experian Information Solutions, Inc., Equifax Credit Information services, and or Trans Union, LLC).

---

[1] *See* Debt Buyers' Ass'n v. Snow, 481 F. Supp. 2d 1, 4 (D.D.C. 2006)(citing RMA's memorandum.); *also see* Fed. Trade Comm'n, The Structure and Practices of the Debt Buying Industry at ii-iii (2013)( https://www.ftc.gov/sites/default/files/documents/reports/structure-and-practices-debt-buying-industry/debtbuyingreport.pdf).

20.    Reporting an account as "in collections" will lower a consumer's credit score, raising the consumer's costs of borrowing or causing lenders and employers to refuse to contract with a consumer.

21.    While consumers may have a separate, individual claim related to their credit report (*see* 15 U.S.C. 1681 et seq.), reporting the alleged debt to a CRA is used by debt collectors like Dyck O'Neal to enforce consumer transactions and compel consumers to pay debts.

22.    Dyck O'Neal is uniquely aware of the dangers and troubles related to buying old mortgage debt from their ongoing experience with mortgage debt.[2] ("Dyck O'Neal Inc. of Dallas, filed more than 10,000 suits in Florida against former homeowners for the difference in their mortgage balance and the value of the home at foreclosure.")[3]

23.    Dyck O'Neal occupies a unique space in the debt buying market, buying up and/or collecting on defaulted mortgage debt for Fannie Mae and/or Freddie Mac.[4]

24.    Fannie Mae and Freddie Mac have publicly stated that they do not pursue every deficiency balance.[5]

25.    In many cases, Fannie Mae, Freddie Mac and other lenders will opt to forgive the deficiency or waive the right to collect the difference between the sale price of the foreclosed home and the total due on the mortgage.[6]

---

[2] https://www.nytimes.com/2014/11/16/business/borrowers-beware-the-robosigners-arent-finished-yet.html; https://www.wsj.com/articles/SB10001424053111904060604576572532029526792 ;
[3] https://www.news-press.com/story/news/local/2018/02/17/great-recession-10-years-later-foreclosure-crisis-cut-deeply-sting-still-felt/1079686001/
[4]    https://www.businessinsider.com/r-americans-face-post-foreclosure-hell-as-wages-garnished-assets-seized-2014-10
[5] https://www.businessinsider.com/r-americans-face-post-foreclosure-hell-as-wages-garnished-assets-seized-2014-10
[6] *Id.*

26.     The right to collect the deficiency on a mortgage is a contractual right.

27.     Waiver occurs when a party to a contract voluntarily and intentionally renounces a known right or has taken action that is contrary to that right. *Steckline Comm. V. Journal Broadcast Group*, 388 P.3d 84, 91 (Kan. 2017).

28.     When a lender or its assignee, including a mortgage lender and/or Fannie Mae or Freddie Mac, waive the deficiency balance on a foreclosed mortgage, the deficiency is considered "canceled" or "discharged" by the Internal Revenue Service ("IRS"). *See* 26 U.S.C. § 61(a)(11).

29.     Cancellation of debt is taxed under the theory that the debtor has realized an accession to wealth because they have zero liability to repay a debt. *United States v. Kirby Lumber Co.,* 284 U.S. 1 (1931); 26 U.S.C. 61(a)(11)(using the term "discharge").

30.     A debt is only "canceled" when it becomes clear that a debt will "[n]ever have to be paid." *Cozzi v. Comm'r.,* 88 T.C. 435, 441 (1987).

31.     Whenever a lender "cancels" or "discharges" a debt in excess of $600, the IRS requires the discharging entity to report the cancellation of debt to the IRS on an IRS Form 1099-C. 26 U.S.C. § 6050P and 26 C.F.R. § 1.6050p-1.

32.     A Form 1099-C contains several important fields that lenders or assignees fill in to provide information to the IRS and taxpaying consumers.[7]

33.     Relevant to mortgage transactions, the most critical box on a 1099-C is Box 6, which reports to the IRS and the taxpayer what the lender or assignee did that caused it to file a 1099-C.

---

[7] See e.g. 2018 Instructions for Forms 1099-A and 1099-C, published by the IRS and publicly available at https://www.irs.gov/pub/irs-pdf/i1099ac.pdf

34.    For example,  codes "D" or "G" are commonly used in association with mortgage debt.

35.    By filling in a "D" in Box 6 of a 1099-C, the reporting entity informs the IRS that "the creditor elects foreclosure remedies that by law extinguish or bar the creditor's right to collect the debt."[8]

36.    By filling in a "G" in Box 6 of a 1099-C, the reporting entity reports "[a] discharge of indebtedness because of a decision or a defined policy of the creditor to discontinue collection activity and cancel the debt."[9]

37.    However, Dyck O'Neal continues to pursue collection of debts after a previous owner of the account canceled the debt and a 1099-C was issued, even if the consumer brings these facts to Dyck O'Neal's attention.

38.    Pursuant to Treas. Reg. § 1.6050P-2(e) and 26 U.S.C § 6721, it is unlawful for creditors to file a 1099-C with inaccurate information, subject to penalties for failure to comply.

39.    Taxpayers need accurate information because, as noted by the court in *In re Crosby,* 261 B.R. 470 (Bankr.  D. Kan. 2001), the creditor filing inaccurate information with the IRS could lead to the consumer being penalized and unable to reasonably defend themselves.

---

[8] 2018 Instructions for Forms 1099-A and 1099-C, p. 4, published by the IRS and publicly available at https://www.irs.gov/pub/irs-pdf/i1099ac.pdf
[9] 2018 Instructions for Forms 1099-A and 1099-C, p. 4, published by the IRS and publicly available at https://www.irs.gov/pub/irs-pdf/i1099ac.pdf

40.     When a consumer does not dispute the amount stated on the 1099-C, the consumer loses their path to judicial review and the IRS determination that the amount stated on the 1099-C is income becomes a final agency determination.

41.     The Tenth Circuit recognizes that where judicial review is available, but not pursued, a final administrative decision is binding and cannot be relitigated. *Hobby v. Hodges*, 215 F.2d 754 (10th Cir. 1954); see also *Alten v. Ellin & Tucker, Chartered*, 854 F.Supp. 283 (D.Del. 1994).

42.     State laws, such as the KCPA, also declare it unlawful for Suppliers to use "exaggeration, falsehood, innuendo or ambiguity" or "[fail] to state a material fact, or the willful concealment, suppression or omission of a material fact." K.S.A. 50-626(b)(2) and 50-626(b)(3).

43.     The KCPA, in K.S.A. 50-627(1) specifically declares it to be unconscionable, and therefore unlawful when:

> The supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor.

44.     All of these various legal burdens are addressed simply and easily by honest businesses who report the status of a debt in clear language the consumer can understand and make the same reports to the IRS.

45.     Simply put, a debt is either still owed, or it is not. Federal and state law place a burden on creditors, including debt buyers like Dyck O'Neal, to accurately report this information to consumers and taxpayers because the consumers are, in turn, compelled by law to rely on creditor's representations in reporting their income to IRS.

46.     However, Dyck O'Neal, like many members of its industry, continue to attempt to enforce these alleged debts after the alleged debt has been reported to the IRS as cancelled and consumers have been forced to pay taxes on them.

47.     On information and belief, Dyck O'Neal attempts to collect from thousands of consumers every year for debts that have already previously been reported in a 1099-C as being cancelled or discharged.

**PLAINTIFF'S ALLEGATIONS RELEVANT TO THIS ACTION**

48.     Plaintiff took out a mortgage with True Home Solutions, LLC ("TrueHome").  The mortgage had an account number ending in 6555 (the "Mortgage").

49.     For reasons irrelevant to this cause of action, Plaintiff was unable to make payments on the Mortgage.

50.     Plaintiff discussed his situation with TruHome and made efforts to arrange for sale of the property secured by the mortgage to mitigate his and TruHome's damages.

51.     Plaintiff was successful in finding a willing purchaser for the Mortgage, but for reasons unknown, TruHome declined to approve the sale.

52.     With no purchaser and Plaintiff unable to make payments on the Mortgage, TruHome foreclosed on the property.

53.     Freddie Mac issued the 1099-C for the Mortgage, identifying the event in question as a category "D," or foreclosure election event that released Plaintiff from liability to repay the deficiency balance.

54.     Plaintiff received the 1099-C for the Mortgage, dutifully reported the same to the IRS, and payed tax on this income.

55.     In 2017, Plaintiff was shocked and surprised when Dyck O'Neal began sending letters and making phone calls to Plaintiff's cellular phone asserting that Plaintiff still owed a deficiency on the Mortgage.

56.     On information and belief, Dyck O'Neal was an assignee of Freddie Mac and had no more right to collect the Debt from Plaintiff than Freddie Mac would.

57.     Freddie Mac had released Plaintiff from all liability, so Plaintiff never owed Dyck O'Neal anything for the Debt.

58.     On or about May 8, 2017 Plaintiff obtained assistance of counsel for resolution of the Debt.

59.     On or about May 9, 2017 Plaintiff's attorney reached out to Dyck O'Neal, attaching proof that a Freddie Mac had released Plaintiff from liability.

60.     Plaintiff also filed a dispute with at least one of the major Credit Reporting Agencies, Experian Information Solutions, Inc.. (collectively the "CRAs").

61.     Plaintiff received responses form the CRAs indicating that Dyck O'Neal had "updated" his account but continued to report that a balance was due.

62.     After receiving at least one report from a CRA, Plaintiff's attorney was contacted by a representative of Dyck O'Neal who asked Plaintiff for more information to be reviewed by "the committee."

63.     Despite an alleged review and response to the CRA investigation, Dyck O'Neal continues to assert that Plaintiff owes a debt from the deficiency on the Mortgage.

64.     Neither Dyck O'Neal nor any previous holder of the Mortgage has filed a corrected 1099-C with the IRS or sent one to Plaintiff.

## CLASS ACTION ALLEGATIONS

65.     Pursuant to 23(a) and 23(b)(3), Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of himself and all others similarly situated, defined below as a "Class."

66.     More specifically, Plaintiff defines the Class as follows:

    a.    For TCPA claims: All consumers in the State of Kansas, between November 19 2014 and the present, that were contacted by Dyck O'Neal through automatic telephone dialing systems and or artificial or pre-recorded voice to cellular phone messaging, including direct-to-voicemail messaging or direct drop voicemails, in connection with a debt which had previously been reported in a 1099-C as being cancelled or discharged.

    b.    For KCPA claims: All consumers in the State of Kansas, between November 19, 2015 and the present that Dyck O'Neal attempted to collect debt from that was previously reported in a 1099-C as being cancelled or discharged.

67.     Excluded from the Classes are all directors, officers, agents, and employees of Defendants and the courts to which this case may be assigned.

68.     All those who were contacted by Dyck O'Neal to collect debts not legally owed, cancelled debts, or for a substantially similar purpose, namely the Class Members, are victims of the same improper and unlawful demands of Defendant.

69.     The number of potential Class Members is undetermined at this time but can readily be determined from Defendants' records.

70.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members.  These common legal and factual questions, each of which may also be certified under Rule 23(c)(4), include the following:

    a.    Whether Dyck O'Neal's conduct violated the TCPA;

b.  Whether Dyck O'Neal's conduct violated the KCPA;

c.  Whether Plaintiffs and the other Class members are entitled to equitable relief, including declaratory relief, restitution, rescission, a preliminary and or a permanent injunction; and

d.  Whether Plaintiffs and the other Class members are entitled to damages and or other monetary relief.

71.  Plaintiff's claims are typical of the claims of the Class because Dyck O'Neal alleged Plaintiff owed a debt that had been canceled by a previous creditor and or assignee.

72.  Plaintiff is a member of these Classes and is committed to prosecuting this action. Plaintiff has gathered and reviewed all relevant documents necessary for filing this case, and has, and will continue to proactively participate in this class litigation, thoroughly reviewing documents, asking questions and following the counsel of his lawyers for the benefits of the Classes he seeks to represent. Plaintiff will fairly and adequately protect the interests of Class Members.

73.  Adjudication of this case on a class-wide basis is manageable by this Court.

74.  The Plaintiff and Class Members' rights, as they relate to the actions of Defendants in attempting to collect cancelled debts, are the same or are so similar as to be legally and factually indistinguishable in all material aspects. As a result, it will not be difficult for the Court or jury to objectively determine whether Defendants have violated the KCPA and or TCPA, and whether Plaintiff and Class Members are entitled to actual and or statutory damages, and in what amount, as a result of the Defendant's attempts to collect cancelled debts. This Court is an appropriate forum for this dispute.

75.     Plaintiff has retained as counsel attorneys who are competent and experienced in consumer, class action, and complex litigation. Plaintiff's counsel will fairly and adequately represent Plaintiff and the interests of the Class Members. Plaintiffs have no interests adverse or antagonistic to those of the Class.

76.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

   a.  given the size of the proposed Classes, individual joinder of each Class Member's TCPA and/or KCPA claims is impracticable;

   b.  given the relatively small damages suffered by individual Class Members, as well as the likelihood that many Class Members will not know their federal and state rights have been violated, most Class Members have little ability to prosecute an individual action due to the complexity of issues involved in this litigation and the significant costs attendant to litigation on this scale;

   c.  when Defendants' liability has been adjudicated, claims of all Class Members can be determined by the Court;

   d.  the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

   e.  Dyck O'Neal's has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class members as a whole;

f.  this action will cause an orderly and expeditious administration of Class Members' claims, and economies of time, effort and expense will be fostered and uniformity of decisions will be ensured;

g.  other available means of adjudicating the claims of Plaintiff and Class Members— such as thousands of individual actions brought separately and pursued independently in courts throughout the State of Kansas—are impracticable and inefficient;

h.  without a class action, Class Members will continue to suffer damages and the violations of law by Defendants will proceed without remedy while they continue their unlawful debt collection activities; and

i.  this action presents no material difficulties that would preclude management by the Court as a class action.

## COUNT I:  VIOLATIONS OF 47 U.S.C § 227

77.   Plaintiff incorporates all preceding and following paragraphs as though fully set forth herein.

78.   The TCPA prohibits use of automatic telephone dialing systems and or artificial or pre-recorded voice to cellular phone messaging, including direct-to-voicemail messaging or direct drop voicemails, without the called parties' prior, express consent. 47 U.S.C § 227(b).

79.   The TCPA prohibits calls to cellular phones after a prior express consent is withdrawn or revoked. 47 U.S.C § 227(b).

80.   On information and belief, Dyck O'Neal used and continues to use an automatic telephone dialing system and or pre-recorded messages to contact Plaintiff and the members of the class on their cellular phones.

81.    Plaintiff and the members of the class only consented, if at all, to calls from the original creditors for the purposes of communication regarding the mortgages and or loans with the original creditors.

82.    Plaintiff's and the class members' consent only remained valid so long as the contractual relationship continued.

83.    When TruHome and the other holders of the alleged debts terminated the contractual relationship, also terminated any consent to call Plaintiff and the class member's cellular phones.

84.    All the calls and or direct-to-voicemail messages made by Dyck O'Neal to Plaintiff and the class members were made without prior express consent.

85.    Each of Dyck O'Neal's repeated calls and or direct-to-voicemail messages to Plaintiff and the members of the class made without prior, express authorization violated 47 U.S.C § 227(b).

86.    As a direct and proximate result of Defendant's willful and or negligent refusal to comply with the TCPA as described herein, Plaintiff and the members of the class have suffered loss and damage including, but not limited to: intrusion into seclusion, violation of rights secured by federal statute, expenditure of significant time, energy and out-of-pocket costs, considerable distress, mental anguish, worry, frustration, fear and embarrassment.

87.    Defendant's complete and utter indifference as to its obligations under the TCPA reveals a conscious disregard of the rights of Plaintiff and the members of the class, and the injuries suffered are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against Defendant, pursuant to 47 U.S.C. § 227(b)(3).

WHEREFORE, Plaintiff, Stephen Robbins, respectfully prays for judgment as follows:

a) Statutory damages of $500 per call or message to Plaintiff and each member of the Class, or if the court finds that the Defendant's violations were done willfully and knowingly $1,500 per call or message to Plaintiff and each member of the Class;

b) Injunctive relief permanently enjoining Dyck O'Neal from contacting Class Members through automatic telephone dialing systems or artificial or pre-recorded voice to cellular phones, including direct-to-voicemail messaging or direct drop voicemails.

## COUNT II:  VIOLATIONS OF K.S.A. 60-623, ET SEQ.

88.     Plaintiff incorporates all preceding and following paragraphs as though fully set forth herein.

89.     Plaintiff is a consumer as defined by K.S.A. § 50-624(b) of the KCPA.

90.     Dyck O'Neal is a supplier of consumer products as defined by K.S.A. § 50-624 and is subject to the requirements and provisions of the KCPA.

91.     The Debt involved a consumer transaction as defined by K.S.A. § 50-624(c).

92.     The KCPA provides that "No supplier shall engage in any deceptive act or practice in connection with a consumer transaction." K.S.A. § 50-626.

93.     The above-described actions and representations of Dyck O'Neal are deceptive as described by K.S.A. § 50-626(b)(2) which prohibits the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact, in this case specifically including whether Dyck O'Neal retained a legal right to demand payment from Plaintiff.

94.    The KCPA prohibits suppliers from engaging in "any unconscionable act or practice in connection with a consumer transaction. An unconscionable act or practice violates this act whether it occurs before, during or after the transaction." K.S.A. § 50-627.

95.    Unconscionability is a question for the Court, who is directed by K.S.A. § 50-627 to consider "circumstances of which the supplier knew or had reason to know, such as, but not limited to:

    (1) The supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests. . .

    (6) The supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment.

96.    Dyck O'Neal continued to attempt to collect the Debt when Dyck O'Neal had no legal right to collect and or was equitably estopped from collecting.

97.    On information and belief, Dyck O'Neal's acts, statements, and omissions alleged above are Dyck O'Neal's standard policy and or procedures.

98.    Dyck O'Neal's acts and omissions as described above are deceptive under K.S.A. §50-626 and unconscionable under K.S.A. §50-627.

99.    Dyck O'Neal's policy complained of herein is unfair and unconscionable because it violates public policy in that Dyck O'Neal is legally obligated to provide accurate and truthful information to the IRS, Plaintiff and similarly situated consumers by 26 U.S.C. § 6721, 26 U.S.C. § 7206(2), 18 U.S.C. 1001, 16 U.S.C. § 1681s-2 and K.S.A. §50-626.

100.    Dyck O'Neal's policy complained of herein is unfair and unconscionable because it violates the duty of good faith and fair dealing in that Dyck O'Neal asserted that Plaintiff owed the Debt when Dyck O'Neal had not obtained sufficient documentation or evidence to know whether Plaintiff owed the Debt or not.

101.    Dyck O'Neal's policy complained of herein is unfair and unconscionable because it violates the duty of good faith and fair dealing in that it subjects consumers, like Plaintiff, to foreseeable inconsistent adjudications of the status of their debts: the IRS considers them "waived" or "canceled," but Dyck O'Neal seeks to treat these debts as "still owed."

102.    Dyck O'Neal's acts alleged above were intentional, willful, wanton and malicious.

103.    As a result of Dyck O'Neal's use of fraud, deception, unfair and unconscionable acts and or practices, Plaintiff suffered an damages including financial loss, expenditure of significant time, energy and out-of-pocket costs, considerable distress, mental anguish, worry, frustration, fear and embarrassment, entitling Plaintiff to an award of actual damages as determined by a jury, an award of punitive damages in an amount to be determined by a jury, plus attorneys' fees and the costs of this action, pursuant to K.S.A. §50-634.

WHEREFORE, Plaintiff prays for Judgment as follows:

a)    Declaratory relief that the acts complained of herein are unlawful and prohibited by K.S.A. §50-623 et seq.;

b)    Injunctive relief enjoining Dyck O'Neal from asserting in any forum that Plaintiff owes the Debt;

c)    Actual damages sustained by Plaintiff and the Class members in an amount to be set by a jury;

d)    Punitive damages in an amount sufficient to punish Dyck O'Neal for its conduct and to deter Dyck O'Neal and others from engaging in similar future conduct;

e)    Reasonable attorneys' fees; and

f)    Such other relief as this honorable Court deems just.

**JURY DEMAND**

Plaintiff respectfully requests a jury trial on all issues so triable.

<u>**DESIGNATION OF PLACE OF TRIAL**</u>

Plaintiff respectfully requests that trial be held in the above captioned matter at the Robert

J. Dole Federal Courthouse in Kansas City, Kansas.

Dated:  November 19, 2018          Respectfully Submitted,

**THE WILLISTON LAW FIRM, LLC**

/s/ *Keith N. Williston*

Keith N. Williston, Esq.
KSD# 78645
201 SE Williamsburg Drive
Blue Springs, MO 64014
Phone: (913) 207-5450
willistonkeith@yahoo.com

**BOYD KENTER THOMAS & PARRISH, LLC**


/s/ Joshua A. Sanders
Mark E. Parrish          Mo. Bar No. 40571
Joshua A. Sanders      Mo. Bar No. 64305
PO Box 1099
221 W. Lexington Avenue, Suite 200
Independence, Missouri 64051
Telephone: (816) 471-4511
Facsimile:  (816) 471-8450
E-mail:  mparrish@bktplaw.com
E-mail:  jsanders@bktplaw.com

*Attorneys for Plaintiff*