**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| STEPHEN ROBBINS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 2:18-cv-02623 |
| | ) | |
| DYCK O'NEAL INC., | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S MOTION FO RSUMMARY JUDGMENT**

COMES NOW, Plaintiff, Stephen Robbins ("Plaintiff") and in response to Defendant, Dyck O'Neal Inc.'s ("Defendant") Motion for Summary Judgment (Dkt. 19) and states:

## I.     INTRODUCTION

Plaintiff objects to Defendant's abuse of process. Defendant represented that it intended to file a dispositive motion based on legal argument and Rule 26 initial disclosures. However, Defendant attached affidavits from previously undisclosed witnesses containing fact and conclusory allegations not in the pleadings or Defendant's Rule 26 disclosures. These unduly prejudice Plaintiff, as Plaintiff has not yet had an opportunity to conduct discovery.

Nevertheless, the evidence submitted by Defendant proves Plaintiff's allegations have merit and that summary judgment should be denied. Defendant's evidence suggests that TruHome Solutions, LLC ("TruHome") sent Plaintiff a 1099-C while acting as an agent of the Federal Home Loan Mortgage Corporation ("Freddie Mac"). TruHome sent the 1099-C because TruHome believed that Freddie Mac had canceled the debt. Either Freddie Mac waived the right to collet the debt, or TruHome did, and Plaintiff does not owe it.

After Plaintiff notified Defendant of the 1099-C, Defendant (and *not* Freddie Mac) contacted TruHome and requested a "corrected 1099-C" be issued. TruHome claims to have created and sent a "corrected" 1099-C that communicated the debt had not been canceled.

1

Thus, Defendant has established that:

1. The first 1099-C communicated that the debt was canceled as a matter of fact, regardless of the Internal Revenue Services' ("IRS") policy.

2. The first 1099-C was more likely correct because it was created closer in time and based on information from Freddie Mac without any outside influence.

3. The second 1099-C is less reliable because it was created later, and after the inconsistent and unsupported conclusions of Defendant who had a motive to lie, cover up or misinterpret Freddie Mac's intention.

4. Defendant either still does not know or is consciously concealing Freddie Mac's decision on whether to cancel the debt or not.

Defendant's argument also fails as a matter of law because the overwhelming weight of authority is against it. Opposing Defendant's is a century of U.S. Supreme Court precedent, multiple Federal statutes, innumerable IRS filings in multiple courts, an IRS order of rulemaking, and the ruling in a case that is binding on Defendant. Against this overwhelming weight of authority, Defendant can only produce isolated phrases from two non-binding and non-precedential IRS opinion letters along with a handful of district court cases that depend on taking those same statements out of context. The Court should follow binding precedent.

As laid out more fully below, Defendant relies on inadmissible evidence and so fails to establish any undisputed material facts in Defendant's favor, and Defendant's argument would fail as a matter of law anyway. Defendant's motion should be denied.

## II.      SUMMARY OF ARGUMENT

Defendant's argument that the 1099-C(s) in this case do(es) not report cancellation of debt fail at the outset because Defendant's affidavits and documents show that either Freddie

Mac or TruHome waived the right to collect. For example, the affidavit of Tamie Thurston supports finding that Freddie Mac canceled the debt. (Dkt. 21 ‖ 8) Tamie Thurston's conclusory allegation that Freddie Mac *did not* cancel the debt contains multiple levels of hearsay, and relies or was influenced by the unsupported conclusions of Defendant outlined in the similarly flawed affidavit of Mary Resch (Dkt. 22). Mary Resch's affidavit states that Defendant concluded Freddie Mac had not canceled the debt but fails to mention any facts that could support her conclusion.

Defendant's evidence establishes –or at least supports— Plaintiff's position that Freddie Mac canceled the debt. The 1099-C made closer in time and with superior knowledge, communicated to Plaintiff that the debt had been canceled. The second 1099-C was allegedly created after Plaintiff disputed liability for the debt and Defendant asked TruHome to create a new, "corrected" 1099-C. Defendant wanted to avoid liability, not make sure it was accurately conveying information.

Finally, Defendant's argument that a 1099-C does not discharge a debt misses the mark and fails. Plaintiff is not arguing that a 1099-C canceled the debt, but that the 1099-C reported that the debt was canceled prior to the filing of the form. In any case, Defendant asks this Court to overrule the U.S. Supreme Court, the 10th Circuit Court of Appeals, Congress and the IRS just to excuse Defendant from liability. This should not be done.

## III. RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

1.      Plaintiff took out a mortgage with TruHome Solutions, LLC, on May 14, 2008. (Plaintiff's Complaint at ¶ 48; Affidavit of Tamie Thurston at ¶ 3).

**ANSWER: Uncontroverted.**

2.      TruHome Solutions, LLC provided servicing for Freddie Mac as lender for Plaintiff's mortgage on investment property in St. Louis, Missouri. (Affidavit of Tamie Thurston at ¶ 3).

**ANSWER: Controverted. The statements in the affidavit are not supported by documentation and thus are both conclusory and beyond the limit established by the Court. (Dkt. 12; Dkt 21 ¶3). Plaintiff has not been permitted to conduct discovery and so has insufficient information to admit or deny the allegations and therefore denies.**

3.      Plaintiff failed to honor its obligations in making payments upon that mortgage. (Plaintiff's Complaint at ¶ 49; Affidavit of Tamie Thurston at ¶ 4).

**ANSWER: Controverted in part. For reasons irrelevant to this cause of action, Plaintiff was unable to make payments on the Mortgage, further discovery is likely to uncover a more nuanced set of facts than stated here. (Dkt. 1, ¶ 49)**

4.      TruHome Solutions, LLC exercised its rights under the mortgage and foreclosed on Plaintiff's property. (Plaintiff's Complaint at ¶ 52; Affidavit of Tamie Thurston at ¶ 5).

**ANSWER: Controverted. Defendant's affidavits are inconsistent, suggesting that TruHome was acting as Freddie Mac's agent, whether this was lawful under the circumstances warrants further discovery. (Dkt. 21 ¶ 5). Plaintiff has not been permitted to conduct discovery and so has insufficient information to admit or deny the allegations and therefore denies, except to the extent stated in ¶ 52 of the Complaint.**

5.      A Trustee's Deed under Sale was filed by SouthLaw, P.C. on July 13, 2015 on behalf of the Grantee, TruHome Solutions, LLC. (Affidavit of Tammie Thurston, Exhibit 1, at ¶ ¶6, 14 and Trustee's Deed attached thereto as Exhibit B).

4

**ANSWER: Controverted. Defendant's affidavits are inconsistent, suggesting that TruHome was acting as Freddie Mac's agent. (Dkt. 21 ₧ 5).  Plaintiff has not been permitted to conduct discovery and so has insufficient information to admit or deny the allegations and therefore denies.**

6.     TruHome Solutions, LLC conveyed the property to the Federal Home Loan Mortgage Corporation on July 24, 2015. (Affidavit of Tammie Thurston at ¶¶ 6, 9, and 15 and Special Warranty Deed attached as Exhibit C thereto).

**ANSWER: Uncontroverted.**

7.     TruHome Solutions, LLC executed an Assignment of Note naming the Federal Home Loan Mortgage Corporation as Assignee on December 7, 2016. (Affidavit of Tammie Thurston at ¶ 7, 16 and Exhibit E attached thereto).

**ANSWER: Controverted. Defendant's affidavits contain inconsistent information on the chain of assignment and ownership that Plaintiff believes will be clarified with further discovery. (Dkt. 21 ₧ 3, 5). Plaintiff has not been permitted to conduct discovery and so has insufficient information to admit or deny the allegations and therefore denies.**

8.     Federal Home Loan Mortgage Corporation executed an Assignment of Note naming the Dyck-O'Neal Inc. as Assignee on December 14, 2016. (Affidavit of Mary Resch, Exhibit 2, at ¶ 4 and Assignment of Note attached thereto as Exhibit E).

**ANSWER: Controverted in part. The affidavits and statements are inconsistent, and further discovery may uncover that the purported assignment was invalid. (Dkt. 21 ₧ 3, 5). Uncontroverted that the documents were created and signed on the dates listed.**

9.     Freddie Mac issued a 1099-C for the mortgage. (Plaintiff's Complaint at ¶ 53; Affidavit of Tammie Thurston at ¶ 8).

**ANSWER: Controverted. This is inconsistent with the facts stated in Defendant's affidavits. (Dkt. 21 ℙ 8).**

10.     The 1099-C was issued in error. (Affidavit of Tammie Thurston at ¶ 8, 10).

**ANSWER: Controverted. This statement is not supported by the record, as it relies on purely conclusory statements and the affidavit of Tammie Thurston contains multiple levels of hearsay: (a) Tammie Thurston is making the statement (b) made to TruHome by Defendant (ref. Dkt. 22 ℙ 10) (c) implicitly relating the conclusion of Defendant described in Dkt. 22 ℙ7, but that conclusion is not supported by any evidence on the record and Defendant does not explain how or why it reached this conclusion. Further, Plaintiff has not been permitted to conduct discovery and so has insufficient information to admit or deny the allegations and therefore denies.**

11.     On or about May 16, 2017, Dyck-O'Neal became aware that a 1099-C was issued to Plaintiff Stephen Robbins. (Affidavit of Mary Resch at ¶6 and correspondence attached thereto as Exhibit F).

**ANSWER: Uncontroverted.**

12.     Upon review of the 1099-C, the information therein was found not to be correct. Specifically, Box #2 contained an incorrect figure and Box #5 were not properly executed. (Affidavit of Mary Resch at ¶7; Affidavit of Tamie Thurston at ¶ 8).

**ANSWER: Controverted. This statement is not supported by the record, as it relies on purely conclusory statements and multiple levels of hearsay: (a) Tammie Thurston is making the statement; (b) made to TruHome by Defendant (ref. Dkt. 22 ℙ**

**10); (c) implicitly relating the conclusion of Defendant described in Dkt. 22 ℙ7, but Mary Resch's conclusion is not supported by any evidence on the record and Defendant does not explain how or why it reached this conclusion. Further, Plaintiff has not been permitted to conduct discovery and so has insufficient information to admit or deny the allegations and therefore denies.**

13. On June 7, 2017, Defendant contacted Plaintiff's counsel and sought confirmation that Plaintiff had filed the 1099-C with his taxes. Plaintiff's counsel refused to provide proof of filing. (Affidavit of Mary Resch at ¶¶ 8, 9 and correspondence attached thereto as Exhibit G).

**ANSWER: Uncontroverted.**

14. On or about June 15, 2017, Defendant contacted TruHome Solutions, the previous servicer of Plaintiff's debt, and requested issuance of a corrected 1099-C. (Affidavit of Mary Resch at ¶10; Affidavit of Tamie Thurston at ¶¶ 10-11).

**ANSWER: Controverted. Plaintiff has not been permitted to conduct discovery and so has insufficient information to admit or deny the allegations and therefore denies. Further, this statement contains the purported conclusion that a second, different 1099-C would be "corrected." At best, the evidence would show that one of the 1099-Cs contained an error, but not which one.  (Dkt 21 ℙ 8, 10-12; Dkt 22 ℙ 7, 10-11)**

15. A corrected 1099-C was filed, and a copy delivered to Plaintiff, through his counsel, on September 20, 2017. (Affidavit of Tammie Thurston at ¶¶ 11-12 and Corrected 1099-C, attached thereto as Exhibit A).

**ANSWER: Controverted. This claim is not supported by competent, substantial or admissible evidence. Specifically, this statement contains the conclusion that a**

second 1099-C was "corrected," despite their being no evidence submitted to support that conclusion. (Dkt 21 ‖ 8, 10-12; Dkt 22 ‖ 7, 10-11) Plaintiff has not been permitted to conduct discovery and so has insufficient information to admit or deny the allegations and therefore denies.

16.    The amended 1099-C was sent to Plaintiff's Counsel and filed on September 20, 2017 (Affidavit of Mary Resch at ¶11 and Correspondence attached thereto as Exhibit H; Affidavit of Tamie Thurston at ¶ 13).

**ANSWER: Controverted. The statements in the affidavits are not supported by documentary evidence and are thus conclusory and outside the Court's order. (Dkt. 22 ‖ 11; Dkt 21 ‖ 13; Dkt 12). Plaintiff has not been permitted to conduct discovery and so has insufficient information to admit or deny the allegations and therefore denies. (Affidavit of Stephen Robbins attached as Exhibit A, ‖ 5)**

17.    Plaintiff filed its Complaint on November 19, 2018. (Plaintiff's Complaint, Docket #1).

**ANSWER: Uncontroverted.**

18.    In his Petition, Plaintiff states no facts alleging the lender's intent to discharge the debt upon filing the 1099-C. (Plaintiff's Complaint).

**ANSWER: Controverted in part. Plaintiff denies Defendant's implication, and further denies that this is a material fact. It is uncontroverted that the 1099-C reported that Freddie Mac discharged the debt prior to filing the 1099-C, not at the time of filing. (Affidavit of Tamie Thurston Dkt. 21, ‖ 8; Affidavit of Stephen Robbins attached as Exhibit A to this Response and the 1099-C incorporated therewith). If Freddie Mac discharged the debt prior to sending the 1099-C, then Freddie Mac could not have**

8

intended to discharge the debt a second time by filing the 1099-C. As argued below,

TruHome may have waived the right to collect on behalf of Freddie Mac by filing the

1099-C, but this is a question of state law. (See argument below).

## IV.   PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

19.    Defendant is a member of the Receivables Management Association, formerly

known as the Debt Buyer's Association ("DBA"). (Dkt. 1 ¶11; Dkt. 6 ¶ 11).

20.    DBA litigated the issues of IRS regulations for filing 1099-Cs and its impact

on debt collection against the IRS on behalf of DBA's members, which includes Defendant, a

matter of public record of which the Court may take notice. *DBA v. Snow*, 481 F. Supp. 2d 1,

4 (D.D.C. 2006); (Dkt. 1 ¶11; Dkt 6 ¶ 11).

21.    In their normal course of business, members of DBA, like Defendant, purchase

nothing more than a spreadsheet that provides minimal identifying information for the alleged

debtor, an account number, and an alleged balance. This is a matter of public record and

admission of which the Court may take judicial notice. *DBA,*481 F. Supp. 2d at 4.

22.    Defendant did not obtain a complete record of the account from Freddie Mac,

otherwise Defendant would have known about the 1099-C before Plaintiff's counsel contacted

Defendant. (Dkt. 22 at ¶6 and correspondence attached thereto as Exhibit F).

23.    Plaintiff has not received a copy of any 1099-C other than the first one, showing

$41,337.74 in debt discharged on July 9, 2015. (Affidavit of Stephen Robbins attached as

Exhibit A, ¶ 5)

24.    The 1099-C sent to Plaintiff indicated $41,337,74 was discharged "pursuant to

an election of foreclosure remedies by a creditor that statutorily extinguishes or bars the

creditor's right to pursue collection of the indebtedness." (1099-C attached to Affidavit of Stephen Robbins, *cf* 26 CFR § 1.6050P-1(B)(2)(D)).

## V.   ARGUMENT AND AUTHORITIES

### A.   Legal Background: Discharge of Indebtedness Income

Understanding the legal issue in this case requires a short diversion into the history of American tax law. Starting with the seminal case of *United States v. Kirby Lumber Co*., 284 U.S. 1 (1931), the U.S. Supreme Court has recognized that "income" can arise when a creditor forgives or abandons a debt, thereby "freeing up" assets that were previously burdened by debt obligations. *See United States v. Centennial Sav. Bank FSB*, 499 U.S. 573, 582 (1991)(and cases cited therein):

> Borrowed funds are excluded from income in the first instance because the taxpayer's obligation to repay the funds offsets any increase in the taxpayer's assets; if the taxpayer is thereafter released from his obligation to repay, the taxpayer enjoys a net increase in assets equal to the forgiven portion of the debt, and the basis for the original exclusion thus evaporates.

Congress subsequently codified the taxation of "discharge of indebtedness income" at 26 U.S.C. § 61(a)(12) and then empowered the IRS to mandate reporting of these discharges in 26 U.S.C. § 6050P. The IRS, under its rulemaking authority issued 26 CFR §§ 1.6050P-0, 1.6050P-1 and 1.6050P-2 to regulate this reporting. In these regulations the IRS used a term originating in *United States v. S.S. White Dental Mfg. Co*., 274 U.S. 398, 401 (1927): "Identifiable Event." This term of art means an event that establishes "a loss was fixed with certainty, or that a discharge of debt occurred." *Friedman v. Comm'r,* 216 F.3d 537, 547-548 (6th Cir. 2000).

Previously, Section 1.6050P–1(b)(2) listed eight "identifiable events" that trigger information reporting obligations on the part of an applicable financial entity, only one of which was likely to occur without an actual discharge of indebtedness: the expiration of a 36-month testing period with no bona-fide collection efforts. *See Debt Buyers' Ass'n v. Snow*, 481 F. Supp. 2d 1, 4-10 (D.D.C. 2006). These "identifiable events" were to be reported on an IRS form 1099-C, creating a rebuttable presumption that an actual discharge occurred. *Id.* If an event occurred that could be an "identifiable event," but no actual discharge took place, the reporting entity could rebut the presumption by attaching a letter providing evidence rebutting the assumption. *Id.* This would enable a reporting entity, like TruHome or Defendant, to comply with the IRS reporting obligations and state law requiring honest disclosures to consumers. *Id.* at 13-14.

Despite this clear guidance from the Supreme Court, Congress and the IRS, a split has developed in some district courts. (Dkt. 20 p. 6-9 and cases cited therein). In the Tax Courts and courts of appeal, the IRS argues that a 1099-C is evidence that a debt has been discharged within the meaning of § 61(a)(12).[1] In district courts cases where the IRS is not a party, creditors argue that the IRS does not see the 1099-C as evidence of a § 61(a)(12) discharge, just a mere accounting change. *See Ware v. Bank of Am. Corp.*, 9 F. Supp. 3d 1329 (N.D. Ga.

---

[1] Balice v. Comm'r, T.C. Memo 2015-46. (*appeal dismissed Balice v. Comm'r*, No. 15-2366, (3rd Cir. 2016) 1099-C reports income from cancellation of debt, supports finding of deficiency for failure to report, and "Balice has no arguable legal basis on which to appeal the Tax Court's judgment."); Clark v. Comm'r, T.C. Memo 2015-175; Dunnigan v. Comm'r, T.C. Memo 2015-190; Gaffney v. Comm'r, T.C. Summary Op. 2010-128; Hahn v. Comm'r, T.C. Memo 2007-75; Jelle v. Comm'r, 116 T.C. 63 (2001); Jenkins v. Comm'r, T.C. Memo 2012-181; Johnson v. Comm'r, 77 T.C.M. 2005 (1999);  Kleber v. Comm'r, T.C. Memo 2011-233 ; Martin v. Comm'r, T.C. Summary Op. 2009-121; Mears v. Comm'r, T.C. Memo 2013-52; Owens v. Comm'r, T.C. Memo 2002-253; Payne v. Comm'r, T.C. Memo 2008-66; Watts v. Comm'r, 78 T.C.M. 1207 (1999).

2013). This split has occurred where plaintiffs argue that the 1099-C has a legal effect pursuant to IRS policy and creditors take advantage of pro se litigants. *Id.* These creditors isolate phrases from two IRS opinion letters addressed to the debt buying industry that were only intended to address category (h) events, much as Defendant seeks to do here. (Dkt. 20, p. 6-9). Understandably, district courts faced with two legally erroneous arguments often side with the more professionally prepared and presented argument, but bad facts still make bad law.

A few districts have pierced the arguments offered by both sides to address the issue: the information contained in a 1099-C is material, not the form itself. *See e.g. Baker v. Am. Fin. Servs.,* No. 3:16-CV-00065-GNS, 2016 U.S. Dist. LEXIS 97040, at *6-7 (W.D. Ky. July 25, 2016). This is the key here, as the 1099-C at issue in this case reported a category "D" event, which means "A *cancellation* or extinguishment of an indebtedness pursuant to an election of foreclosure remedies by a creditor that statutorily *extinguishes or bars the creditor's right to pursue collection of the indebtedness.*" 26 CFR § 6050p-1(2)(i)(D). Nevertheless, Defendant denies that this is what Freddie Mac meant when it indicated that the identifiable event fell into this category (Dkt. 6 ⁋ 53). In other words, Defendant's position is that a 1099-C does not mean anything because it does not mean the only thing it could mean.

This has caused a lot of confusion about 1099-Cs and cancellation of debt and is premised on phrases taken out of context from two opinion letters addressed to debt buyers and discussing Section 1.6050P-1(b)(2)(i)(H), the 36-month testing period. (Dkt. 20 p. 6-9 and cases cited therein; I.R.S. Info. 2005-0207, 2005 WL 3561135 (Dec. 30, 2005);[2] I.R.S. Info.

---

[2] )"[Y]ou request information concerning the reporting obligations under section 6050P(c)(2)(D) for an organization that purchases debt. . . . Section 1.6050P-1(b)(2)(i)(H) of the regulations provides a rebuttable presumption that an identifiable event has occurred for

2005-0208, 2005 WL 3561136 (Dec. 30, 2005)[3]). Unfortunately, opportunistic debt collectors and other creditors continue citing these letters to grossly misstate the IRS policy, exacerbating the confusion and thwarting the IRS' efforts. (e.g. Dkt. 20 6-9).

Further confounding the issues, Defendant implies that IRS policy **permits** debt collection by highlighting that the IRS policy "does not '*prohibit* collection activity after a creditor reports by filing a Form 1099-C.'" (Dkt. 20 p. 7). The IRS cannot have a policy permitting or prohibiting collection of contractual obligations because the IRS has no authority to regulate contracts or debt collection. *see DBA v. Snow*, 481 F. Supp.2d at 12-14. These matters are regulated by state and federal law and outside the IRS' jurisdiction. *Id.* The IRS regulations do not prohibit debt collection after filing a 1099-C because any such regulation would be *ultra vires* and void on its face.

This Court is not bound by any case cited by Defendant, and the IRS eliminated the 36-month testing period discussed in the letters cited by Defendant for the specific purpose of eliminating the confusion perpetrated by those decisions. *Rev. Proc*. 2018-46, 2018 IRB LEXIS 546, 2018-39 I.R.B. 460. This Court should not be persuaded by the decisions of a handful of district courts based on blatant misinterpretations of two IRS opinion letters that have been superseded by an order of rule-making specifically intended to supplant them. This

---

the calendar year if a creditor has not received a payment at anytime during a 36 month testing period

[3] "[Y]ou request information concerning the reporting requirements under section 6050P(c)(2)(D) for organizations that purchase debt. . . . Q2. How does the 36-month non-payment testing period identifiable event apply to an organization that purchases debt, and how may the organization rebut the presumption that this identifiable event has occurred? A2. Section 1.6050P-1(b)(2)(i)(H) of the regulations provides a rebuttable presumption that an identifiable event has occurred during a calendar year if a creditor has not received a payment during a 36 month testing period . . ."

Court should follow the precedents binding on this Court, Federal Statutes, valid federal regulations, the IRS order of rulemaking, and the consistent history of IRS representations in litigation (including at least two cases involving Kansas residents: EARNSHAW v. COMMISSIONER, No. 5221-01, 2002 Tax Ct. Memo LEXIS 196 (T.C. Aug. 5, 2002); ALEGRIA v. COMMISSIONER, No. 8620-04S, 2005 Tax Ct. Summary LEXIS 9 (T.C. Oct. 11, 2005)).

The Court should follow binding authority of the near-century long precedent set by the Supreme Court in *Kirby Lumber,* enacted by Congress as a statute at 26 U.S.C. §§ 61(a)(12) and 6050P, laid out in the IRS' rules and routinely litigated by the IRS, including at least one case litigated on Defendant's behalf.

### B.     Standard of Review

Summary judgment is only appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In considering a motion for summary judgment, the court must view the evidence and draw inferences in the light most favorable to the non-moving party. *Kalebaugh v. Berman & Rabin, P.A.*, 43 F. Supp. 3d 1215, 1218 (D. Kan. 2014) *citing Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). Summary judgment should not be granted if there is a genuine issue as to any fact that is material to the conclusive issues in the case. *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 404, 425, 77 P.3d 130 (2003). "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Nahno-Lopez*, 625 F.3d at 1283 (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if under the substantive

14

law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (*citing Anderson*, 477 U.S. at 248)).

A Court may consider evidence submitted by an affidavit, but "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *See* Fed. R. Civ. P. 56(c)(4); District of Kansas Rule 56.1(d); Rule 602 of the Federal Rules of Evidence. Facts that the affiant could not have actually perceived or observed are inadmissible hearsay. *Argo v. Blue Cross Blue Shield*, 452 F.3d 1193, 1200 (10th Cir. 2006)(internal quotations and citations omitted). Similarly, "statements of mere belief" must also be disregarded. *Id.*

### C. Freddie Mac Canceled the Debt by Waiving the Right to Collect.

Plaintiff claims Freddie Mac decided not to pursue collection of the Debt, which is clearly within the meaning of "discharge of indebtedness" under 26 U.S.C. § 61(a)(12). *Centennial Sav. Bank FSB*, 499 U.S. at 582; *United States v. Kirby Lumber Co.*, 284 U.S. 1, 3 (1931); *Commissioner v. Jacobson*, 336 U.S. 28, 38 (1949); *see also Commissioner v. Tufts*, 461 U.S. 300, 307, 310-311, n. 11 (1983). This cancellation or forgiveness occurs independently of any reporting to the IRS. However, the IRS requires cancellation or forgiveness of debt to be reported through a form 1099-C. *See generally Rev. Proc.* 2018-46 § 6050P. Whether Freddie Mac canceled the debt is a material fact in this case.

In Kansas, "[w]aiver in contract law implies that a party has voluntarily and intentionally renounced or given up a known right, or has caused or done some positive act or positive inaction which is inconsistent with the contractual right. Once it has been established that a right has been waived, the party possessing the contractual right is precluded from

asserting it in a court of law." *United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc*., 221 Kan. 523, 526-27 (1977). A principal is bound by the representation of its agent. *Turon State Bank v. Bozarth*, 235 Kan. 786, 789-90, 684 P.2d 419, 422 (1984).

According to Defendant's affiants, TruHome created a 1099-C, acting as an agent of Freddie Mac, because TruHome concluded that Freddie Mac canceled the debt. (Dkt 21 ¶ 8). Later, TruHome concluded that Freddie Mac did not cancel the debt and claims to have sent a "corrected" 1099-C that was filled out differently and indicated no debt discharged. (Dkt. 21 ¶¶ 10-12, Exhibit A). These two facts alone establish that Plaintiff's claim has merit. The first 1099-C communicated that Freddie Mac canceled the debt, which is confirmed because the second 1099-C was filled out differently when TruHome believed something different. (Dkt. 21 ¶¶ 8, 10-11). Defendant's own affiants establish that the first 1099-C is a statement or act inconsistent with the contractual right to collect the debt. Freddie Mac (or TruHome acting as an agent of Freddie Mac) waived the right to collect the debt. *United American State Bank & Trust Co*., 221 Kan. at 526-27. Defendant has proven Plaintiff's claim as a matter of fact.

In the context of summary judgment, the Court should give no weight to allegations that TruHome later reached different conclusion or that a second 1099-C was sent. The first 1099-C was a prior, inconsistent statement that impeaches Defendant's affiants and the second 1099-C. *United States v. Woody*, 250 F. App'x 867, 881 (10th Cir. 2007); (Dkt. 21 ¶¶ 10-12). And Defendant's affiants claim that the second 1099-C was only sent after Plaintiff's attorney contacted Defendant, creating a motive for Defendant and TruHome to fabricate this evidence to avoid legal or contractual liability. (Dkt. 21 ¶ 10-12; 22, generally). The first 1099-C was more reliable because it was made closer in time to the event reported. *See Green v. Schweiker*, 582 F. Supp. 786, 788-89 (D. Kan. 1984). The Court should assume these inferences because

Plaintiff, as the non-moving party, is entitled to all reasonable inferences in Plaintiff's favor. *Kalebaugh*, 43 F. Supp. 3d at 1218.

Defendant's evidence establishes that TruHome or Freddie Mac waived the contractual right to collect the debt. *Turon*, 684 P.2d at 422. *De minimis,* Defendant has supplied evidence that creates a genuine issue of material fact as to whether the debt was waived. *Kalebaugh*, 43 F. Supp. 3d at 1218. At best, Defendant has proven that one of two 1099-C's was a mistake without showing which *must* be erroneous, and Defendant's witnesses provide a basis to find that the second 1099-C was itself a duplicitous act to cover up Defendant's unlawful acts. Defendant should not be granted summary judgment because Defendant's evidence fails to establish that undisputed material facts that would support a decision in Defendant's favor.

### D. Defendant's Argument is Barred by the Anti-Injunction Act and Declaratory Judgment Act

Defendant asks this court declare IRS policy, so the Court should assess whether it has jurisdiction to grant the relief Defendant seeks. Specifically, Defendant is asking this Court to rely on out of context phrases from two superseded IRS opinion letters and declare that "a 1099-C, standing alone, constitutes an insufficient basis, as a matter of law, to show discharge of a debt." (Dkt. 20 p. 9). Defendant raised this as an affirmative defense that the IRS policy bars Plaintiff's claim. (Dkt 6 ¶¶ 108-115). Comparing two cases reveals the consequences of such a decision: thousands – or millions – of IRS determinations would be declared unlawful, and the IRS would have to investigate every 1099-C filed. *Balice v. Comm'r, T.C. Memo* 2015-46. (*appeal dismissed Balice v. Comm'r*, 634 F. App'x 349, 349 (3d Cir. 2016)(not precedential); *cf Owens v. Commissioner,* No. 02-61057, 2003 U.S. App. LEXIS 12481 (5th Cir. May 15, 2003) *(per curiam) (unpublished)*. This would interfere with the IRS' ability to

assess and collect taxes, which means that the Court does not have subject matter jurisdiction over Defendant's argument. *DBA,* 481 F. Supp.2d at 9-10.

The Anti-Injunction Act, 26 U.S.C. § 7421(a) ("AIA") bars any claim raised "for the purpose of restraining the assessment or collection of any tax . . . whether or not such person is the person against whom such tax was assessed." *DBA,* 481 F. Supp.2d at 7-8. Similarly, the Declaratory Judgment Act, 28 U.S.C. § 2201(a) ("DJA") provides Federal Courts authority to grant declaratory relief "except with respect to Federal taxes." *Id.* These statutes are read harmoniously, as the DJA is "at least as broad" as the AIA. *Id.* "A court must look to the effect the requested relief would have on the assessment or collection of taxes." *Jericho Painting & Special Coating, Inc. v. Richardson*, 838 F.Supp. 626, 629 (D.D.C. 1993).

Plaintiff's position is found in *Balice,* where the IRS relied solely on a 1099-C issued by Chase Bank USA to find that a debt had been canceled and that the taxpayer had received income. 2015 TC Memo 46, *10. In dismissing Balice's appeal, the 3rd Circuit noted that the IRS "presented unrebutted evidence of the taxpayer's tax deficiency and that he was subject to additions of tax due to his failure to file returns and pay his tax liability." 634 F. App'x 349, 349 (3d Cir. 2016). If Plaintiff is correct that a 1099-C is evidence that a debt has been cancelled, then the IRS, the tax court and 3d Circuit were right, and the IRS can continue assessing and collecting taxes on canceled debt. 2003 U.S. App. LEXIS 12481 * 14-15.

If the Court sides with Defendant, the Court would place the *Owens* burden to investigate on the IRS for every assessment of tax for discharge of indebtedness. 2003 U.S. App. LEXIS 12481 *11-15. An individual agent would have to contact both the issuer and the taxpayer, issue summons and review documents. *Id.* *3-4, 11-15. Currently, as we see in *Owens,* an investigation would only occur if the taxpayer disputes the amount stated on the

1099-C, and could show a basis for the dispute. *Id.* *3-4 (the date listed on the 1099-C came after the 1099-C was filed, so it could only show an intent to cancel in the future). Under Defendant's theory, however, the IRS would have to investigate reports of as little as $600 of discharged debt for *every* 1099-C filed. And many of these taxpayers' exemptions would mean the IRS ultimately assesses and collects no tax. This would drastically increase the costs of enforcement on the IRS, with no perceivable benefit.

Similarly, if the Court finds that a 1099-C reports something other than a § 61(a)(12) discharge, the Court will be creating a local rule of evidence that would apply to other taxpayers. This could create massive problems because taxpayers may seek judicial review in the local district court or with the tax court. 26 U.S.C. § 7429(b)(2)(B). Smart taxpayers would simply ignore the IRS notice of deficiency, then file their dispute with this Court, where the 1099-C would not be evidence. The IRS could no longer depend on the uniform and reliable decisions in the tax court because forum shopping, not the law, would determine the outcome. Thus, the IRS would have to stop collecting taxes for § 61 (a)(12) discharge of indebtedness or conduct thorough investigations, like that described in *Owens*. 2003 U.S. App. LEXIS 12481. This would substantially interfere with the IRS' ability to assess and collect taxes.

The AIA and DJA bar this Court from granting relief that would interfere with the IRS' ability to assess or collect taxes, so the AIA and DJA deprive this court of subject matter jurisdiction over Defendant's affirmative defense. *DBA* 481 F. Supp.2d at 9-10.

### E.  Issue Preclusion Also Bars Defendant's Argument

Defendant knows (or reasonably should know) that their argument has no merit. *DBA v. Snow,* litigated by DBA on behalf of Defendant, decided the specific issue Defendant

19

presents here: what a debt buyer like Defendant reporting in a 1099-C and how that is harmonized with the state and federal consumer protection laws. 481 F. Supp.2d 1. A creditor's 1099-C communicates that an actual § 61(a)(12) discharge occurred if the additional information is not submitted along with the 1099-C. *Id.* at 6. If a creditor has a duty to send a 1099-C when no actual § 61(a)(12) discharge occurred, then the creditor also has a duty to disclose the facts surrounding the identified event to rebut the presumption of discharge that the 1099-C creates. *Id.* at 13-14. Thus, *DBA v. Snow* squarely addressed the same issue pending here against a party that was in privity with and asserting Defendant's rights.

A court may apply issue preclusion to prevent "a party from relitigating an issue once it has suffered an adverse determination on the issue . . ." *Park Lake Resources Ltd. Liability v. U.S. Dept. of Agr.*, 378 F.3d 1132, 1136 (10th Cir. 2004). Issue preclusion bars a claim or affirmative defense where:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *Id.*

*DBA v. Snow* litigated the issue Defendant seeks to litigate here. 481 F.Supp.2d 1. In *DBA v. Snow*, the DBA argued on behalf of Defendant that the information in a 1099-C will inform a consumer that a debt has been discharged within the meaning of § 61(a)(12). *Id.* at 6-7. Both the D.C. Circuit Court and the IRS agreed with DBA that this is what would be communicated on a 1099-C. *Id.* at 7, 9, 12-13. This issue has been fully and fairly litigated on behalf of Defendant by a party in privity with Defendant and who was acting on Defendant's

behalf. More to the point, DBA was litigating against the IRS, who had the unique opportunity to explain the interaction between state law and the IRS code. *Id.* The doctrine of issue preclusion prevents Defendant from relitigating this issue now.

## F. Defendant's Procedural Posture and Affidavits Further Demonstrate Defendant's Intent to Deceive

The parties represented to the Court that there were no significant fact issues to develop in this case, leading the Court to enter a non-standard order including a stay of discovery. (Dkt. 12). However, Defendant has not filed a motion based solely on disclosed documents but included declarations in affidavits signed at or near the time of filing the motion. (Dkt. 21, signed the day of filing; Dkt. 22, signed two days before filing). These affidavits contain classic hearsay statements and mere conclusions without any supporting facts which Plaintiff has not had an opportunity to obtain discovery on. These affidavits contain inadmissible statements and provide Defendant with the opportunity to unilaterally control the evidence in this case, prejudicing Plaintiff who cannot depose the affiants or discover contrary evidence.

### 1. Defendant Misrepresented its Intentions to Plaintiff and the Court

The order of the Court notes: "After discussion, the parties seemed to agree it would be most efficient to exchange their initial disclosure documents with an eye toward addressing certain preliminary issues, but to otherwise stay discovery pending ruling on Defendant's Dispositive Motion." (Dkt. 12 p. 1). The Court that "a stay of discovery, aside from exchange of the initial disclosure documents, pending ruling on Defendant's Dispositive Motion is appropriate." (Dkt. 12 p. 3). Clearly, Defendant has exceeded this boundary, as both affiants claim to relate verbal conversations and events for which no documentation is provided. (Dkt.

21 ¶¶ 3, 8, 9, 10, 11, 13; Dkt. 22 ¶¶ 5, 6 (partial), 7, 8, 10). And Defendant relies heavily on these statements. (Dkt. 20 Statement of Undisputed Facts ¶¶ 1, 2, 9, 10, 11, 12, 14).

Plaintiff has been prejudiced because Defendant relies on these statements in order to "establish" key points in this litigation. Plaintiff and the Court have been misled, and Plaintiff has been unduly and unfairly prejudiced.

2.  <u>The Affidavits Contain Inadmissible Statements and Statements of Limited Admissibility.</u>

"Affidavits or declarations shall be made on personal knowledge." District of Kansas Rule 56.1(d); *See also* F. R. Civ. P. 56(e); *and see* Rule 602 of the Federal Rules of Evidence (testifying witnesses must "ha[ve] personal knowledge of the matter"). Under the personal knowledge standard, an affidavit is inadmissible if "'the witness could not have actually perceived or observed that which he testifies to.'" *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997). At the summary judgment stage, "statements of mere belief" in an affidavit must be disregarded. *Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994).

Here, Defendant's affidavits contain multiple statements relating statements made by someone other than the declarant, asserted for the truth of the matter asserted. (e.g. Dkt. 21 ¶ 8, 9, 10, 11). This is the classic definition of hearsay. Fed. R. Evid. 801(c). These statements should not be regarded as substantive evidence in support of Defendant's argument. *Argo v. Blue Cross & Blue Shield of Kan., Inc*., 452 F.3d 1193, 1200 (10th Cir. 2006).

Defendant's affidavits also contain unsubstantiated conclusions and beliefs that should not be considered to prove the truth of the matter asserted such as:

a. Dkt. 21 ¶ 10: "TruHome learned that Freddie Mac did want to pursue this balance, and never intended to waive the balance." This is both classic hearsay (*cf* Dkt. 22 ¶ 10), and merely states the conclusion TruHome reached.

b. Dkt. 21 ¶ 11, 12, 13: "After confirming with Freddie Mac, TruHome prepared a corrected 1099-C." This is another example of classic hearsay, trying to sneak in a claim that Freddie Mac (or more accurately an unknown employee) "confirmed" some statement or question that is also not described. Nowhere does the affiant support either the conclusion that this understanding of Freddie Mac's intention was superior to the prior belief (*cf* Dkt 21 ¶ 8), nor does the affiant provide any support for the conclusion that the second 1099-C was "corrected." These statements are a mix of hearsay and unsubstantiated conclusions.

c. Dkt. 22 ¶ 7: "Upon review of the 1099-C, the information therein was found not to be correct." The affiant nowhere provides the basis for this conclusion, or indeed the identity of the person(s) who reached it, leaving it both a mere conclusion and another instance of hearsay.

These statements are mere statements of belief that the Court should not consider as evidence for the truth of the matter asserted. *Tavery*, 32 F.3d at 1427 n.4. The Court can consider them as evidence of the affiants' state of mind, but they are not evidence that the affiant's beliefs were true. *Faulkner v. Super Valu Stores*, 3 F.3d 1419, 1434 (10th Cir. 1993).

### G. Conclusion

Defendant blatantly and willfully ignored the Court's order and submitted a motion relying on inadmissible evidence. Defendant's motion also hopes this Court will ignore a century of Supreme Court precedent, Tenth Circuit precedent, federal statutes, federal

regulations, IRS orders of rule-making and the consistent pattern and practice of the IRS that all demonstrate that a 1099-C reports § 61(a)(12) discharge of indebtedness. The overwhelming weight of authority supports a finding that the IRS policy is to treat a 1099-C as reporting a § 61(a)(12) discharge and being sufficient evidence to create a presumption of discharge.

Regardless of the IRS' policy, Defendant's evidence shows that Freddie Mac waived the right to collect no later than when Freddie Mac or TruHome sent the first 1099-C representing that Freddie Mac canceled the debt. The evidence also shows that Defendant knows that the 1099-C communicated that the debt was extinguished, because Defendant claims to have taken steps to "correct" the 1099-C.

And Defendant is estopped from arguing any other position because DBA litigated the central legal question against the IRS, which clearly defended the position that a 1099-C reports discharge of indebtedness income unless the reporting entity takes steps to rebut that presumption. *DBA,* 481 F. Supp.2d at 14.

The Court should not reward Defendant with summary judgment when Defendant misled the Court and Plaintiff, relied on inadmissible declarations and clearly and openly misstated the law.

WHEREFORE, Plaintiff requests that this Court deny Defendant's Motion for Summary Judgment and for such other relief as is just and proper.

Dated:  May 15, 2019                   Respectfully Submitted,

**THE WILLISTON LAW FIRM, LLC**

/s/ *Keith N. Williston*
Keith N. Williston, Esq.

KSD# 78645
201 SE Williamsburg Drive
Blue Springs, MO 64014
Phone: (913) 207-5450
willistonkeith@yahoo.com

**BOYD KENTER THOMAS & PARRISH, LLC**

/s/ Joshua A. Sanders
Mark E. Parrish        Mo. Bar No. 40571
Joshua A. Sanders      Mo. Bar No. 64305
PO Box 1099
221 W. Lexington Avenue, Suite 200
Independence, Missouri 64051
Telephone: (816) 471-4511
Facsimile:  (816) 471-8450
E-mail:  mparrish@bktplaw.com
E-mail:  jsanders@bktplaw.com

***Attorneys for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 15, 2019 a copy of the foregoing was electronically filed with the Court's CM/ECF system, which will give notice to all attorneys of record.

*Keith N. Williston*

Keith N. Williston
Attorney for Plaintiff