**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| STEPHEN ROBBINS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 2:18-cv-02623 |
| | ) | |
| DYCK O'NEAL INC., | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Plaintiff, Stephen Robbins ("Robbins") and for his Memorandum in Support of Summary Judgement in against Defendant, Dyck O'Neal Inc. ("Dyck O'Neal") on Dyck O'Neal's Counterclaim and states:

**INTRODUCTION**

Dyck O'Neal's counterclaim must fail because the Federal Home Loan Mortgage Corporation's ("Freddie Mac") made an election in foreclosure that eliminated all rights to collect the deficiency balance Dyck O'Neal seeks to enforce. And Dyck O'Neal cannot dispute this because TruHome Solutions, LLC ("TruHome") represented that Freddie Mac had canceled the debt while acting as Freddie Mac's agent. Dyck O'Neal is an assignee of Freddie Mac and bound by Freddie Mac's representation that the debt has been canceled. And Dyck O'Neal is bound by the representations even if TruHome made a mistake. This is necessary in both law and equity, as Robbins was compelled to rely on those representations by federal law and threat of sanctions from the Internal Revenue Service ("IRS"). Dyck O'Neal has no enforceable claim and cannot prove the claim, so Robbins is entitled to judgment as a matter of law.

Dyck O'Neal's counterclaim should also fail because it is barred by the Anti-Injunction Act and Declaratory Judgment Act. These acts bar courts from issuing relief that interferes with the assessment and collection of taxes, which surely includes declaring that the IRS arbitrarily and

illegally assessed and collected taxes from Robbins. The IRS relied on the same 1099-C that Robbins asserts is evidence of cancellation of debt, assessed taxes and then collected taxes from Robbins on the same basis. If this Court declares that the debt is still owed and not canceled, the Court will declare that the IRS violated Plaintiffs' right to due process by illegally assessing and collecting taxes in error and without evidence. Dyck O'Neal may not collaterally attack the IRS assessment and taxation here, so its claims against Robbins must also fail.

And every party (other than Dyck O'Neal) involved in this process agrees that the 1099-C TruHome sent to Robbins communicated that the debt has been canceled. For example, Freddie Mac's Single-Family Seller/Service Guide, section 8106.4's opening paragraph reads:

> The Servicer must report cancellations of Borrowers' mortgage debt on Internal Revenue Service (IRS) Form 1099-C, Cancellation of Debt, as required under Section 6050P of the Internal Revenue Code for all cancellations of mortgage debt of $600 or more occurring on or after January 1, 2005, with respect to Mortgages owned or guaranteed in whole or in part by Freddie Mac. IRS Form 1099-C must be filed regardless of whether the Borrower must report the cancellation of debt of income.[1]

Further on, Freddie Mac directs its servicers:

> In the event of a foreclosure sale where deficiency rights were preserved, the Servicer must not initially file an IRS Form 1099-C. Freddie Mac will determine whether to pursue collection of the deficiency of that Mortgage. If Freddie Mac makes a determination not to pursue collection of the deficiency, Freddie Mac will

---

[1] Exhibit 1-C; available online at
https://guide.freddiemac.com/app/guide/content/a_id/1000922?gclid=Cj0KCQjwoqDtBRD-ARIsAL4pviDv-vF_X5N9Jerg8vsm3RRQS3ABDk9e0UE0qn7xb5Y7JWbQL7dyVEkaAkoMEALw_wcB&gclsrc=aw.ds

notify the Servicer in the report described below and the Servicer must then file the IRS Form 1099-C.

TruHome confirms this position. In 2015, TruHome initiated a foreclosure on Robbins' property in Missouri.[2] TruHome and Robbins understood that no deficiency balance would be pursued, meaning that the foreclosure would discharge and cancel Robbins' debt. In 2016 TruHome sent Robbins a 1099-C, which TruHome and Robbins both understood communicated that Robbins' debt had been discharged or "canceled." Robbins discussed the 1099-C with his accountant, who advised Robbins that the debt had been canceled in the foreclosure. With the advice of his accountant, Robbins reported the canceled amount to the IRS as income. The IRS accepted the report and Robbins' payment of $4,809 in taxes on the income from discharge of indebtedness. Everyone agreed that the debt was fully discharged and canceled, and that Robbins no longer owed it.

But Dyck O'Neal wants to argue that everyone else is wrong because Dyck O'Neal paid Freddie Mac an unknown amount for the rights to Robbins' loan (based on experience, Robbins' counsel estimates that Dyck O'Neal paid $1,700.00 or less). Plaintiff informed Dyck O'Neal that Freddie Mac had sent Plaintiff a 1099-C. Dyck O'Neal had no evidence that Freddie Mac had *not* canceled Plaintiff's debt, but Dyck O'Neal decided to continue pursuing Robbins instead of either writing off a loss or getting a refund from Freddie Mac. Dyck O'Neal's sole argument is that a hypothetical 1099-C might not be evidence that a debt was canceled, even though Robbins, Freddie Mac, TruHome and the IRS all agree that *this* 1099-C was.

---

[2] There is some confusion on exactly who was foreclosing and whether the process was valid, but that will be addressed later.

Dyck O'Neal cannot produce facts that would prove their claim. Dyck O'Neal's legal argument would deprive this Court of Jurisdiction. And everyone else agrees on the basic facts of this case. There are not material facts in dispute and Robbins is entitled to judgment in his favor.

## STATEMENT OF UNCONCTROVERTED MATERIAL FACTS

1) On May 14, 2008, Robbins closed a loan (the "Loan") with TruHome Solutions, LLC ("TruHome"), which loan was shortly thereafter sold or otherwise transferred to the Federal Home Loan Mortgage Corporation ("Freddie Mac"). TruHome continued to provide servicing on the Loan after the transfer to Freddie Mac. Doc. 21 ¶ 3.

2) To secure the Loan, Robbins executed a Deed of Trust for certain real property located at 10621 Spring Garden Drive in St. Louis, Mo (the "Property"). The deed named some party other than SouthLaw, P.C. as the trustee. Doc. 21 ¶ Exhibit B.

3) Shortly after purchasing the Property, the housing and real estate markets collapsed in the United States, causing the value of the Property to drop significantly. Exhibit 1 ¶ 12. Exhibit 1-B.

4) At some point in time, Robbins failed to make payments as required. Doc. 21 ¶ 4.

5) Robbins received an offer to purchase the Property, which Robbins communicated to TruHome, but TruHome declined to pursue or accept this offer to purchase.

6) On behalf of Freddie Mac, TruHome requested that SouthLaw, P.C. foreclose on the Property, and SouthLaw P.C. performed and filed foreclosure paperwork on the Property. Doc. 21 ¶ 5-6.

7) SouthLaw, P.C. sold the Property to TruHome for $500.00. Doc. 21, Exhibit B.

8) SouthLaw, P.C. was not the original trustee, and Plaintiff does how or when Southlaw, P.C. was allegedly appointed successor trustee or if the appointment was valid under the Deed of Trust. Exhibit 1 ¶ 10.

9) TruHome understood that Freddie Mac intended not to continue collection of the Loan following foreclosure and therefore sent Robbins a 1099-C showing that there was no deficiency balance on the Loan following foreclosure. Doc. 21 ¶ 8.

10) Specifically, TruHome reported on the 1099-C sent to Robbins that Freddie Mac had made an election in foreclosure that statutorily ended Freddie Mac's right to pursue collection of the debt. Exhibit 1-A; Exhibit 2 p. 3

11) Robbins received a 1099-C from Freddie Mac in 2016, which Robbins also understood to communicate that the Loan had been canceled and would have no deficiency balance. Exhibit 1 ¶ 5; Exhibit 1-A.

12) Robbins obtained the advice of his accountant who also understood the 2016 1099-C to communicate that Robbins received $41,337.74 in income from discharge of indebtedness. Exhibit 1 ¶ 6, 7, 8.

13) Robbins' accountant and Robbins understood that Robbins was required by law to report receipt of $41,337.74 in income from discharge of indebtedness to the Internal Revenue Service ("IRS"). Exhibit 1 ¶ 7; Exhibit 1-A.

14) Robbins reported $41,337.74 as income from discharge of indebtedness for tax year 2015, for which the IRS assessed and collected $4,809.00 in taxes for income from discharge of indebtedness, as reported by Freddie Mac in 2015. Exhibit 1 ¶ 8.

15) Robbins has received no communication from the IRS changing or questioning their assessment and collection of taxes for tax year 2015. Exhibit 1 ¶ 9.

16) The only evidence supporting the IRS assessment and collection of $4,809.00 from Robbins for income from discharge of indebtedness for the tax year 2015 is the 1099-C sent to Robbins in the name of Freddie Mac. Exhibit 1 ¶ 5, 6, 7, 8, 9.

## ARGUMENTS AND AUTHORITIES

### I.      STANDARD OF REVIEW

Summary judgment is required if the moving party demonstrates that "no genuine dispute" about "any material fact" exists and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahomo-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). "An issue of fact is 'genuine' 'if the evidence is such that a reasonably jury could return a verdict for the non-moving party' on the issue." *Id.* (*quoting Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.*

For the moving party to meet its burden, it "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010). If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Id*. (*quoting Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)).

### II.     FREDDIE MAC DISCHARGED THE DEBT

TruHome, acting as the agent of Freddie Mac, told Robbins that the debt was canceled. (Doc. 21 ¶¶ 3, 5, 8). TruHome was acting within the scope of its agency with Freddie Mac. (Doc. 21 ¶¶ 3, 5, 8 and Robbins Exhibit 1-D). Robbins not only had a right to rely on the representations

of TruHome; Robbins was threatened with fines and penalties if Robbins did not rely on TruHomes representations. (Exhibit 1-A). Dyck O'Neal, as the assignee, stands in the shoes of Freddie Mac and can only claim what Freddie Mac could. *Denver Health & Hosp. Auth. v. Beverage Distrib. Co.,* 546 Fed. Appx. 742, 745 (10th Cir. 2013); *Fidelity & Deposit Co. of Md. v. Hartford Cas. Ins. Co.*, 215 F. Supp.2d 1171, 1176-77 (D. Kan. 2002).

A principal is bound by the representations of its agent if that agent is acting within the actual or apparent authority of the agent. *Sharp Elecs. Corp. v. Lodgistix, Inc*., 772 F. Supp. 540, 543-547 (D. Kan. 1991). "[A]ctual authority is determined according to the manifestations as between the principal and agent, rather than the appearance of authority to a third party." *Id.* at 544 (*citing Brown v. Wichita State Univ., 217 Kan*. 279, 287, 540 P.2d 66 (1975) (*further citations omitted*). Actual authority is granted when the principal expressly delegates authority to perform an act to the agent. *Shawnee State Bank v. North Olathe Indus. Park, Inc*., 228 Kan. 231, 613 P.2d 1342 (1980). "Apparent authority is based on intentional actions or words of the principal toward third parties which reasonably induce or permit third parties to believe that an agency relationship exists." *Mohr v. State Bank of Stanely*, 241 Kan. 42, 46, 734 P.2d 1071 (1987). "[O]nce it has been shown that the agent was authorized, either expressly or impliedly, to make representations or statements concerning the subject matter to which the challenged statements pertain, the principal is bound by the agent's statements. *Prairie State Bank v. Hoefgen*, 245 Kan. 236, 244, 777 P.2d 811 (1989) (*quoting 1 Gard's Kansas C. Civ. Proc. 2d Annot*. § 60-460(h), p. 252 (1979)).

<u>TruHome's Representations Bar a Deficiency Judgment</u>

TruHome was the actual, authorized agent of Freddie Mac, whose policy expressly authorized TruHome to send Robbins a 1099-C if, and only if, the debt was canceled. Further, Freddie Mac forbade TruHome from sending a 1099-C if the debt were not canceled. It does not

matter if TruHome made an error, Freddie Mac is bound by TruHome's representation. *Sharp Elecs. Corp.*, 772 F. Supp. at 543-547. Dyck O'Neal, standing in Freddie Mac's shoes, has no more rights that Freddie Mac. *See Denver Health & Hosp. Auth.,* 546 Fed. Appx. at 745; *Fidelity & Deposit Co. of Md.*, 215 F. Supp.2d at 1176-77. Since Freddie Mac would be barred from obtaining a deficiency judgment, Dyck O'Neal is barred from obtaining a deficiency judgment.

<u>TruHome Cut Corners in Foreclosure Because It Believed the Debt was to be Canceled</u>

The property at issue was located in Missouri where mortgages were once a matter of common law. *Carr v. Holbrook,* 1 Mo. 240 (1822). However, the common law has been replaced by statute. *See* Chapter 433 RSMo.  Missouri now follows the lien theory of mortgages. *R. L. Sweet Lumber Company v. E. L. Lane, Inc*., 513 S.W.2d 365 (Mo. banc 1974). "[D]eficiency judgments were unheard of at common law, the right to a deficiency judgment accrues only after strict compliance with the relevant statute. *Executive Financial Services, Inc. v. Garrison*, 722 F.2d 417, 418 (8th Cir. 1983).

While Robbins cannot be certain which specific violation TruHome may have committed, there is reason to believe that TruHome cut corners in the foreclosure process. For example, TruHome requested the foreclosure from an alleged "successor trustee" (which is not documented and may not have even occurred). Only a valid trustee has the power of sale. §443.327 RSMo; *Smith v. Equitable Life Assurance Soc'y*, 448 S.W.2d 588, 592 (Mo. 1970). The trustee is not permitted to appoint an agent to carry out the sale. *Citizens Bank of Edina v. W. Quincy Auto Auction, Inc*., 742 S.W.2d 161, 163-64 (Mo. 1987). Neither may the trustee appoint a successor trustee unless the deed of trust specifically authorizes such appointment. *Smith*, 448 S.W.2d at 592. Unless Dyck O'Neal can prove that the "successor trustee" was validly appointed in accordance with the deed of trust, then the sale violated the statute and Dyck O'Neal has no right to a

deficiency judgment.  § 443.327 RSMo; *Smith*, 448 S.W.2d at 592; *Executive Financial Services, Inc*, 722 F.2d at 418.

Additionally, "if the sale price, alone or in combination with other factors, is so inadequate as to raise an inference of fraud, then the foreclosure sale can be voided." *First Bank v. Fischer & Frichtel, Inc.*, 364 S.W.3d 216, 217 (Mo. 2012). TruHome only paid $500.00 at the foreclosure for a house that TruHome had lent $45,000.00. Robbins notified TruHome of a third-party offer, which TruHome failed to accept. Thus, the foreclosure itself appears to have either been a fraud or likely the result of TruHome being careless because TruHome thought that it would never matter because no deficiency balance would be sought.

Whether due to fraud or carelessness, TruHome appears to have not scrupulously followed the requirements for foreclosure and to have accurately reported to Robbins that no deficiency balance could or would be sought. It is better to accept TruHome's representation to Robbins and the IRS that Freddie Mac discharged Plaintiff's debt. Then  the problems with the foreclosure need never be addressed or investigated, and the current owner of the property need not be disturbed. Robbins would have no reason to challenge the foreclosure, and all parties can move on with their lives.

<u>Robbins is Entitled to Judgment Because Dyck O'Neal's Claim Fails</u>

Dyck O'Neal is bound by TruHome's representation to Robbins that the debt was canceled and forgiven. If Dyck O'Neal has any claim, then it would be against TruHome, not Robbins. Dyck O'Neal's claim against Robbins must fail as a matter of law, and Robbins is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

**III.   DYCK O'NEAL'S CLAIM IS BARRED BY THE AIA AND DJA**

The IRS has already made an administrative determination that Robbins debt was canceled, assessed Robbins taxes on the discharged amount as income and collected $4,809.00 in taxes from Robbins. If the Court would enter judgment in Dyck O'Neal's favor, the Court would collaterally attack the IRS' determination, assessment and taking of Robbins' property. The Anti-Injunction Act, 26 U.S.C. § 7421(a) ("AIA") and the Declaratory Judgment Act, 28 U.S.C. § 2201(a) ("DJA") deprive this Court of jurisdiction on any claim that would declare the IRS determination to be wrongful or arbitrary and so bar Dyck O'Neal's collateral attack on that IRS determination.

The AIA bars any claim raised "for the purpose of restraining the assessment or collection of any tax . . . whether or not such person is the person against whom such tax was assessed." *DBA*, 481 F. Supp.2d at 7-8. Similarly, the DJA provides Federal Courts authority to grant declaratory relief "except with respect to Federal taxes." *Id*. These statutes are read harmoniously, as the DJA is "at least as broad" as the AIA. *Id*. "A court must look to the effect the requested relief would have on the assessment or collection of taxes." *Jericho Painting & Special Coating, Inc. v. Richardson*, 838 F.Supp. 626, 629 (D.D.C. 1993).

*Debt Buyers Association v. Snow* is directly helpful here. 481 F. Supp. 2d 1 (D.D.C. 2006). In *DBA*, the Association argued that a related regulation was unenforceable because it exceeded the authority granted to the IRS. *Id*. at 11. The *DBA* court noted "the [c]ourt agrees that interpretive rules that overreach their statutory authority may be invalidated." *Id*. at 11-12 (citations omitted). But this is precisely what Dyck O'Neal is arguing for here: a 1099-C does not report the only thing that Congress permitted to be reported in the form. (Doc. 55 ¶¶ 111, 115; *cf* 26 USC § 6050P). If the Court adopts Dyck O'Neal's argument, the Court will declare that the IRS overreached their statutory authority, effectively declaring the implementing regulations void.

This applies equally to the specific 1099-C and IRS assessment in this case as well as to the IRS' general policy. If this Court declares that Robbins' debt was not canceled, it will declare that the IRS assessment against Robbins was unlawful and arbitrary. Robbins paid $4,809.00 in taxes for the discharge of indebtedness income, which can only be supported if the 1099-C is evidence of cancellation. If the 1099-C is not evidence of discharge of indebtedness, then the IRS determination and assessment of taxes against Robbins and essentially every other taxpayer is unsupported by competent evidence, rendering them arbitrary and unlawful. *See Owens v. Commissioner*, 67 Fed. Appx. 253, 2003 WL 21196200 (5th Cir. 2003). If no 1099-C is evidence of cancellation of debt, then every taxpayer who receives one should report no income to the IRS and force the IRS to expend resources investigating every 1099-C issued. *Id.* This would have a chilling effect on the IRS' ability to collect taxes, as it would declare nearly three decades of IRS assessment of discharge of indebtedness income illegal and render 26 U.S.C. § 6050P meaningless. *De minimis,* it would declare the IRS' assessment against Robbins unsubstantiated and unlawful in an action where the IRS is not a party and cannot be made a party. This is clearly barred by the AIA and DJA. *Id.*

## IV. DYCK O'NEAL'S LEGAL ARGUMENT IS BARRED BY ESTOPPEL FROM PRIOR RELATED DECISIONS

A court may apply issue preclusion to prevent "a party from relitigating an issue once it has suffered an adverse determination on the issue . . ." *Park Lake Resources Ltd. Liability v. U.S. Dept. of Agr.*, 378 F.3d 1132, 1136 (10th Cir. 2004). Issue preclusion bars a claim or affirmative defense where:

(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the

doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *Id.*

In *DBA,* the Debt Buyers' Association (the "Association") and the IRS litigated the question of what is communicated on a 1099-C. *Id.*at 3-6. The Association told the *DBA* court, "Section 6050P of the Internal Revenue Code, 26 U.S.C. § 6050P(a)-(d) ("Code") requires . . . any 'applicable financial entity' that discharges the indebtedness of any person to (i) file an information return with the [IRS] setting forth, among other things, 'the amount of indebtedness discharge' and (ii) issue to the person whose debt was discharged a similar information statement." (Exhibit XX p.9) The Association further stated, "Form 1099-C requires the creditor to state in Box 2 of that form the amount of debt canceled." (Exhibit XX p.10). The IRS agreed with this position, informing the *DBA* court, "Section 6050P . . . calls on certain entities to issue 1099s reporting the amount of a debt, and its parts, when they forgive it." (Exhibit XX p. 3). The *DBA* court agreed, finding:

> Treasury Regulation 1 § 6050P-1 clarifies the form in which applicable entities
> must fulfill the reporting requirement mandated by 26 U.S.C. § 6050P(a). 26 C.F.R.
> § 1.6050P-1. HN2 Pursuant to Treas. Reg. 1 § 6050P-1(a), an applicable entity that
> discharges a debt of at least $ 600 of any person must file a Form 1099-C with the
> IRS. *DBA,* 481 F.Supp 2d at 5.

Even if Dyck O'Neal's argument were not barred by the ADA and AIA, the Association litigated the question of what was reported on a form 1099-C on behalf of Dyck O'Neal, and Dyck O'Neal should not be permitted to relitigate the issue here.

## V.   DYCK O'NEAL'S CLAIM IS BARRED BY EQUITABLE ESTOPPEL

"Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts." *Turon State Bank v. Bozarth, 235 Kan*. 786, 789, 684 P.2d 419, 422 (1984).

Freddie Mac and/or TruHome had a duty to send Robbins a 1099-C if, and only if, Freddie Mac canceled Plaintiff's debt. (see argument above). TruHome and/or Freddie Mac voluntarily sent Robbins a 1099-C that showed Freddie Mac had canceled Robbins debt. Robbins was led to believe that the debt had been canceled, and Robins' accountant was also reasonably led to believe the debt had been canceled. Robins relied on this representation in filing and paying his taxes. Robins would now be prejudiced if Dyck O'Neal were permitted to deny that the debt was canceled because even if Robins could obtain a refund from the IRS, Robins would have been wrongfully deprived of his money for an extended period of time. *See Santangelo v. Comcast Corp*., No. 15-cv-0293, 2015 U.S. Dist. LEXIS 69167, at *6-7 (N.D. Ill. May 28, 2015) ("even if the $50.00 deposit were fully refundable, Santangelo still has standing based on the lost time-value of the money.); *Habitat Educ. Ctr. v. U.S. Forest Serv*., 607 F.3d 453, 457 (7th Cir. 2010) (noting that "[e]very day that a sum of money is wrongfully withheld, its rightful owner loses the time-value of the money" and holding that this was enough to confer standing).)

Dyck O'Neal cannot now claim that the debt is still owing because Robbins would be unfairly prejudiced for having relied on the representations made by TruHome and/ Freddie Mac. *Turon State Bank*, 684 P.2d at 422.

13

## CONCLUSION

Dyck O'Neal is bound by TruHome's representation that Robbins' debt was forgiven and so cannot prove their counterclaim. Even if that were not the case, the relief sought by Dyck O'Neal is barred by the AIA and DJA because it would declare unlawful the IRS' assessment and collection of tax on discharge of indebtedness income, thereby chilling the IRS' ability to collect such taxes. Dyck O'Neal cannot succeed on their counterclaim, so Robbins is entitled to judgment as a matter of law. *Kannady*, 590 F.3d at 1169.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Dyck O'Neal, Inc. on Dyck O'Neal's Counterclaim, and for such other relief as is just and proper.

Dated:  December 30, 2019            Respectfully Submitted,

**THE WILLISTON LAW FIRM, LLC**

/s/ *Keith N. Williston*
Keith N. Williston, Esq.
KSD# 78645
201 SE Williamsburg Drive
Blue Springs, MO 64014
Phone: (913) 207-5450
willistonkeith@yahoo.com

**BOYD KENTER THOMAS & PARRISH, LLC**

/s/ Joshua A. Sanders
Mark E. Parrish        Mo. Bar No. 40571
Joshua A. Sanders      Mo. Bar No. 64305
PO Box 1099
221 W. Lexington Avenue, Suite 200
Independence, Missouri 64051
Telephone: (816) 471-4511
Facsimile:  (816) 471-8450
E-mail:  mparrish@bktplaw.com
E-mail:  jsanders@bktplaw.com

*Attorneys for Plaintiff*

14

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2019 a copy of the foregoing was electronically filed with the Court's CM/ECF system, which will give notice to all attorneys of record.

*Keith N. Williston*
Keith N. Williston
Attorney for Plaintiff